## In re Hare

554

*Louis M. Childs, 2d,* and *William Barkley Lex,* for petitioner.

*Desmond J. McTighe* and *Theodore Grayson,* for respondent.

DANNEHOWER, J., November 14, 1935.—This is a petition by Charles R. Jones, guardian of Alfred G. Hare, found to be a weak-minded person, pursuant to the provisions of the Act of May 28, 1907, P. L. 292, as amended by the Act of April 1, 1925, P. L. 101, for an order authorizing payment from the ward's estate of a monthly allowance of $435 for the ward and his second wife, $125 monthly for life insurance premiums, $125 monthly for the support, education, and maintenance of Cynthia, a minor daughter, and to order no allowance for the education and maintenance of an adult son, Alfred, Jr.

The guardian ad litem for the two children, one of whom has reached the age of 21 since the filing of this petition, filed an answer objecting to the amounts of the requested allowances and alleged that a parol agreement for the support of the two children had been entered into before the ward was adjudged to be unable to take care of his estate.

At the hearing on the petition and answer, the testimony disclosed the following facts:

1. Alfred G. Hare, his wife, Laura C. Hare, and their two children, Alfred, Jr., and Cynthia, had lived together at Rosemont, Montgomery County, Pa.

2. In November 1934 the wife learned of her husband's infidelity. He orally agreed to pay $325 monthly for the support of his wife and two children, and then separated from his family, removing to his mother's home in Ardmore, Pa.

3. On March 29, 1935, petitioner was appointed guardian of Alfred G. Hare, and duly qualified.

4. On April 24, 1935, the wife secured a divorce on the grounds of adultery, naming Dorothy M. Rawson, of New York City, as corespondent.

5. The ward's estate consists of a pension of $500 monthly paid by Bank and Insurance Shares, Inc., which pension is subject to cessation or reduction at any time by the board of directors; and also, $204.50 monthly, pursuant to disability clauses under certain life insurance policies, which will continue until October 31, 1943; a total monthly income of $704.50.

6. On May 2, 1935, in the State of New York, the ward married Marie Dorothy Smith, according to the marriage certificate introduced in evidence, who is the same person as Dorothy M. Rawson, corespondent named in the divorce proceedings, and is living with her as man and wife in an apartment at Mamaroneck, N. Y.

7. The ward's son, Alfred G. Hare, Jr., born on September 6, 1914, now 21 years of age and living with his mother, is attending the University of Pennsylvania and has two more years to finish his course of study and graduate. Before attaining his majority he underwent a surgical operation and has unpaid doctors' bills amounting to $235.

From November 1934 until March 1935, when a guardian was appointed, the father paid the mother $325 monthly, or $162.50 for the support, education, and main-

tenance of each child. After his appointment the guardian continued making these payments until July 15, 1935. For the period from July 15, 1935, to September 6, 1935, when the son became of age, the guardian has paid, without prejudice, $212.50, an average of $125 monthly. The son's only estate consists of shares of stock upon which he receives a yearly dividend of $15.

8. The ward's daughter, Cynthia, born on April 10, 1917, now 18 years of age and living with her mother, is at the present time in the Bryn Mawr Hospital, where she underwent an operation on her right leg for an infection of the bone. Hospital, nursing and surgeon's bills, submitted by counsel, amount to $1,038.40. After recovery, she desires to attend a finishing school. Her only estate consists of shares of stock upon which she receives a yearly dividend of $15.

9. The ward, Alfred G. Hare, is 50 years of age, unable to work, and needs constant attention and occasional medical services.

10. At the present time there is a cash balance of approximately $2,500 in the guardian's account.

11. The mother of the two children, Laura C. Hare, former wife of the ward, has an annual income of approximately four thousand dollars from her father's estate and from dividends on shares of stock owned by her.

12. In the spring of 1934 when she and the ward were still husband and wife, the ward took a health trip to Florida. After consulting Charles R. Jones, an intimate friend of the ward who was later appointed guardian, she loaned her husband $450 from her separate estate, having been advised by the guardian, not yet appointed, that a claim for disability had been filed with the insurance company and that she would be repaid when funds were available. Thereafter the guardian received $3,100 as a first payment from the insurance company, but neither he nor the ward has repaid this loan. There is no dispute as to the facts or the amount of the loan. When Mrs. Hare was testifying, she presented this undisputed claim for payment.

The questions which are presented for determination are:

1. Is Laura C. Hare a creditor of the weak-minded person's estate for $450? If so, should the debt be paid?

2. What allowance should be directed for Alfred G. Hare, Jr., son of the ward, for support and for medical attendance during minority, and should such allowance cease after majority?

3. What allowance should be directed for Cynthia Hare, minor daughter of the ward, for her support, maintenance, education, and for medical attendance?

4. What allowance should be directed for the support and maintenance of the ward and his wife?

Section 6 of the Act of May 28, 1907, P. L. 292, for the protection of feeble-minded persons, gives to guardians appointed under the act the same powers and subjects them to the same duties as a committee of lunacy under the Act of June 13, 1836, P. L. 589. The court by the same section is expressly given full power over the guardian "in directing an allowance for the said ward and for the support and maintenance of his wife, or his or her children, and the education of his or her minor children".. Section 20 of the Act of 1836 requires the committee of a lunatic, "from time to time, [to] apply so much of the income . . . as shall be necessary to the payment of his just debts and engagements, and the support and maintenance of such person, and of his family, and for the education of his minor children." Under section 21 of the act, resort may be had to the principal of the personal estate, under the direction of the court, when the income is insufficient.

At the hearing the testimony clearly showed that Laura C. Hare is a creditor of her former husband's estate in the sum of $450. We see no good reason, now that the claim is before the court, why the guardian should not at this time pay the loan, because he has knowledge of the transaction, knows that it is a just and uncontested debt, and has sufficient income in hand to pay it.

Concerning the allowance for Alfred G. Hare, Jr., we regret, especially because he has two more years to finish his college course, that we are unable to order a monthly allowance after his majority has been reached. At common law, a father's legal liability for the support, maintenance and education of his son ceases and determines when the son reaches the age of 21 years, unless the son is in so feeble and dependent a condition physically or mentally as to be unable to support himself: Commonwealth v. Ulrick, 32 Pa. C. C. 283. It will also be noted that both acts of assembly mentioned above give to the court full power over the guardian to direct an allowance for the education of the ward's minor children only. However, when the ward separated from his wife and children, and before a guardian was appointed for him, he voluntarily agreed orally to pay $325 monthly for the support of his family. He made these payments regularly for five months, until a guardian was appointed, and thereafter the guardian for at least three months made payments in the same amount. The court ought to consider the voluntary agreement of the ward in making provision for his family before his disability, especially where such provision is reasonable and commensurate with his income. It is our opinion that an allowance of $162.50 for the son, during minority, is fair, just and reasonable, and from July 15, 1935, until September 6, 1935, when the son attained majority, the guardian should pay a monthly allowance of $162.50, instead of $125 which he has paid. The guardian should therefore pay an additional $74.75 during this period. The surgical and medical attendance for the son was incurred during his minority, and was necessary to preserve the minor's health. The father should pay and is liable for such service, and, therefore, the guardian should pay the balance of this bill, amounting to $235, in addition to the allowance.

With reference to the allowance for Cynthia, the ward's 18-year-old daughter, we deem it sufficient to say that a

monthly allowance of $170 for her support, maintenance and education should be made. In addition thereto the guardian should pay at this time $750, which, together with the allowance, will provide for her support and maintenance and also the hospital, nursing and medical expenses, amounting to $1,038.40, during her two-months' confinement in the hospital.

We now come to the last question presented for decision, and that is: What allowance should be made for the support of the ward, and should his second wife be supported out of the estate? On April 24, 1935, the ward, then a resident of Pennsylvania, was divorced in this county by his first wife on the ground of adultery, and Dorothy Rawson, of New York, was named corespondent. On May 2, 1935, the respondent, Alfred G. Hare, married the corespondent in the State of New York and since that time has resided there with her as man and wife. The guardian has allowed him $250 and an additional $60 for rent of his apartment, or a total of $310 monthly for the support of himself and his second wife, and this amount is deposited by the ward in a joint account with his second wife.

The Act of March 13, 1815, 6 Sm. L. 286, provides:

"That the husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed, during the life of the former wife or husband: but nothing herein contained shall be construed to extend to or affect or render illegitimate any children born of the body of the wife during coverture."

This act, in the eyes of the law, may be said to form part of the decree in divorce, and Alfred G. Hare, respondent, was forbidden to marry the corespondent, Dorothy M. Rawson, during the lifetime of his former wife. This statute imposed upon the respondent a personal disability to marry the corespondent; it is competent for the legislature of any State, in furtherance of its public policy and good morals, to impose a disability upon its citizens re-

stricting their right to contract a marriage. The necessary meaning of this prohibition is that they shall not marry at all, in any circumstances, or at any time or place, so long as the injured party is living. So far as the purpose and meaning of the statute are concerned, it is of no consequence where such subsequent prohibited marriage takes place. The relation itself is abolutely prohibited and hence is within the operative words of the statute, without any reference as to where the marriage occurs. There is no question as to the general rule that a marriage which is valid by the law of the place where it is solemnized is valid everywhere. Of course, even this general rule has its exceptions, where the particular marriage is contrary to good morals, or public policy, or to the positive statutes of the country where it is sought to be enforced: Stull's Estate, 183 Pa. 625; Commonwealth, ex rel., v. Connor, 6 Lack. Jur. 43.

It must be noted that the guardian of the respondent is here on his ward's behalf, asking the aid of the court whose decree the ward has violated. This particular marriage was contrary to good morals and to the positive statute of our State. There is a distinction between recognizing the validity of and giving certain legal effect to such a marriage. To give it legal effect would in a certain sense give countenance by one decree to a marriage entered into in defiance of another decree of this court.

However, we realize that our responsibility is to administer judiciously the weak-minded person's estate for the benefit of himself and his legal dependents. Under the circumstances, the guardian should pay $350 monthly for the comfortable support and maintenance of the ward and, in addition thereto, pay $125 monthly as premiums on certain of the ward's necessary life insurance policies, which are now pledged as collateral security for the ward's obligations. Deducting the monthly allowance of $350 for the ward, $125 for life insurance premiums, and $170 for the ward's minor daughter, Cynthia,

a total of $645, from the total monthly income of $704.50, leaves a monthly balance for saving of $59.50.

The guardian has approximately $2,500 in hand. After paying $235 and $750 for the ward's son's and daughter's medical expenses, $74.75 for past support of the son, and $450 in repayment of a loan from Laura C. Hare, a total of $1,509.75, the guardian will have a balance of $990.25 in his account. After the next three years, when Cynthia will have attained her majority, the guardian will be able to save larger amounts for the future, provided the pension is continued.

And now, November 14, 1935, in accordance with the foregoing opinion and after a careful consideration of the petition and answer and all the testimony presented, it is hereby ordered, adjudged and decreed that Charles R. Jones, guardian of Alfred G. Hare, a weak-minded person, shall pay to Laura C. Hare the sum of $450 in full of her loan to the ward, and the further sums of $235 and $750 for the necessary medical, surgical, hospital and nursing services performed on behalf of the ward's son and daughter; that said guardian shall use and expend $475 monthly, from the income coming into his hands for the support and maintenance of said weak-minded person, for the rent of his apartment and for paying the premiums on certain life insurance policies issued upon the life of said ward; that said guardian shall pay to Alfred G. Hare, Jr., adult son of the ward, the sum of $74.75 due for his support until he reached his majority; that said guardian shall pay to Laura C. Hare the sum of $85 semimonthly, which shall be expended by her solely for the education, support and maintenance of the ward's minor daughter, Cynthia Hare; that the payments heretofore made by said guardian to Laura C. Hare for the support of said two minor children, aggregating $1,025, and to the ward for his support and maintenance, aggregating $2,445.78, be and the same are hereby approved. This order shall be effective only so long as Bank and Insurance Shares, Inc., shall pay said

562

guardian the monthly pension of $500 on behalf of the said Alfred G. Hare. The payments made in pursuance of this order shall be duly accounted for according to law; costs of this proceeding to be paid out of the weak-minded person's estate.